UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN BERRY, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:08-CV-2035-B |
| | § | |
| BRYAN CAVE LLP, et al., | § | (Part of MDL No. 1983; Formerly |
| | § | No. CV 08-1768-MHM in the |
| Defendants. | § | District of Arizona) |

MEMORANDUM OPINION AND ORDER

This case involves a pension plan and is before the Court as a result of a forum transfer from

an Arizona federal district court to this Court by the Multidistrict Litigation Panel. Before the Court

is Defendants'–Bryan Cave LLP and Richard C. Smith–Motion to Dismiss Complaint and Brief in

Support (doc. 46), filed December 31, 2008. Having considered the parties' briefings, the Court

finds the motion should be and hereby is **GRANTED in part** (doc. 46) and **DENIED in part** (doc.

46).

I.

BACKGROUND

This putative class-action lawsuit arises from a dispute related to the design, marketing, and

sale of life-insurance policies used to fund a defined benefit pension plan.[1] (Compl. ¶ 1.) Plaintiffs[2]

---

[1] The background facts are derived from Plaintiffs' Complaint ("Complaint") (doc. 1), filed
September 26, 2008, and on undisputed facts gleaned from the parties' court papers. Where there may be
a dispute over a stated fact, the Court has so indicated by claiming the fact as one stated by that party to
be true.

[2] Plaintiffs are the following: Stephen Berry and Fader Higher, LLC (collectively "Fader Higher");
Mehmet C. Pekerol, M.D. and Mehmet C. Pekerol, M.D., P.C. (collectively "Pekerol"); Jamie Hughes,

in this matter are generally individual professionals—such as doctors, dermatologists, and business owners—and the business entities they operate. (Compl. ¶¶ 5-38.) Plaintiffs allege that Defendants Bryan Cave LLP, Richard C. Smith (collectively "Bryan Cave Defendants"), American Express Tax and Business Services, Inc., Pension Strategies, IBP, LLC, and Pension Strategies, LLC[3] (collectively "Defendants") worked with Economic Concepts, Inc. ("ECI")—a pension and financial services firm—to design a 412(i) plan[4] called the Pendulum Plan. (Compl. ¶ 48.) The Pendulum Plan was funded by specially-designed life-insurance policies that were created by Defendants and several nonparty life-insurance companies ("Insurance Companies"). (Compl. ¶ 54.)

Plaintiffs were contacted by and later met with agents of the Insurance Companies. (Compl. ¶¶ 69, 76, 84, 101, 110, 119, 128, 136, 145, 153, 161.) During these meetings, Plaintiffs contend that the agents represented the retirement and income tax benefits of the Pendulum Plan as well as its compliance with the IRS. (Compl. ¶¶ 71-72, 78-79, 86-87, 103-04, 112-13, 121-22, 130-31, 138-39,

---

Stanton Greene, and Valley Vista Mortgage, Inc. ("Valley Vista"); Robert P. Young, M.D. and Rocky Mountain Dermatology, Inc. (collectively "Rocky Mountain"); Tyrone M. Seils and DP Search, Inc. (collectively "DP Search"); Robert W. MacMillan and MacMillan Construction Company, Inc. (collectively "MacMillan"); Charles R. Brown, DDS and Poulsbo Children's Dentistry (collectively "Poulsbo"); Yoram Hakimi, Noam Maor, and Pacific Home Remodeling, Inc. (collectively "PHR"); David George, Deborah George, and Audio Book Services, Inc. (collectively "ABS"); David R. Hallman, Lynn Hallman, and Accessibility Unlimited, Inc. (collectively "AUI"); Richard Sarmiento, and Richard Sarmiento and Leilani, a Sole Proprietorship (collectively "Sarmiento"); Douglas A. DeSalvo and Douglas A. DeSalvo Chiropractic, Inc. (collectively " DeSalvo"); Brian E. Kilcourse and BEK Consulting LP (collectively "BEK"); and Thomas A. Johnson and Direct Electric of Wisconsin, Inc. (collectively "Direct Electric"). Former Plaintiffs Hodan Rabile, DDS and Rabile Family Dentistry, P.C. voluntarily dismissed their claims against all Defendants on March 13, 2009.

[3]Plaintiffs dismissed without prejudice their claims against former Defendants Pension Strategies, IBP, LLC and Pension Strategies, LLC on March 12, 2009.

[4]A "412(i) plan" is a defined benefit pension plan created under section 412(i) of the Internal Revenue Code (recodified in 2006 as 26 U.S.C. § 412(e)(3)). (Compl. ¶ 45.) Defined benefit plans provide retirement and death benefits to participants. (*Id.*)

147-48, 155-56, 163-64, 171-72, 180-81, 188-89.)  Plaintiffs assert that the agents never disclosed the risks associated with the Pendulum Plan and its life-insurance policies.  (Compl. ¶¶ 68, 75, 80, 89, 106, 115, 124, 132, 141, 149, 157, 165, 174, 182, 190.)  Ultimately, Plaintiffs established Pendulum Plans and purchased life-insurance policies from the Insurance Companies to fund the plans.  (Compl. ¶¶ 69-90, 101-191.)

The Complaint alleges that an opinion letter written by Defendant Bryan Cave LLP ("Bryan Cave"), an international law firm, played a prominent role in the design, marketing, and sale of the Pendulum Plan and policies.  (Compl. ¶¶ 58, 62, 63, 65.)  In September 1999, Bryan Cave delivered a legal opinion ("Bryan Cave Letter") analyzing a specimen life-insurance policy to ECI.  (Compl. ¶ 55.)  The Bryan Cave Letter stated that "(a) it was 'more likely than not' that the Pendulum Plan would be a qualified plan under section 412(i) of the Code; (b) it was 'more likely than not' that the specially designed insurance policy . . . or a 'substantially similar policy' issued by another insurance company 'can meet the requirements of section 412(i) of the Code' . . .; and (c) the Pendulum Plan 'should not be considered a tax shelter.'" (Compl. ¶ 55.)  Plaintiffs allege that the letter made "deliberately vague statements and unsupported legal conclusions," "consciously ignored the tax and legal implications of the underlying scheme," and "[contained] . . . false or misleading statements or omissions."  (Compl. ¶ 56.)  Defendants allegedly intended for the letter to be relied on by Plaintiffs and others similarly situated.  (Compl. ¶ 231.)

Although Plaintiffs were allegedly never told of any risks associated with the Pendulum Plan, the IRS has for a long time criticized certain aspects of abusive 412(i) plans, like the Pendulum Plan. (Compl. ¶ 194.)  Starting in the early 2000s, the IRS began to pay even greater attention to abusive 412(i) plans.  (Compl. ¶¶ 194-95.)  Despite increased criticism by the IRS (and Department of

Treasury), Defendants did not amend or supplement the Bryan Cave Letter, which the Insurance

Companies continued to use in the Pendulum Plan's marketing.  (Compl. ¶ 196.)  On February 13,

2004, the IRS issued a press release, two revenue rulings, and proposed regulations that indicated

that the Pendulum Plan and insurance policies would likely be considered abusive tax shelters.

(Compl. ¶ 197.)

In March 2004, Bryan Cave Defendants allegedly sent ECI a memorandum ("2004 memo")

that noted that employers sponsoring abusive 412(i) plans were now required to file Form 8886,

which notified the IRS of the employer's participation in an abusive tax shelter.  (Compl. ¶ 201.)

In the 2004 memo, Bryan Cave Defendants recommended that employers not file Form 8886 and

instead, file an amended tax return reversing the previous deductions.  (Compl. ¶ 201.)  Plaintiffs

allege, upon information and belief, that Bryan Cave Defendants knew that ECI would distribute the

2004 memo to its clients, including Plaintiffs.  (Compl. ¶ 202.)  ECI allegedly posted the 2004 memo

on its website.  (*Id.*)  In January 2005, Bryan Cave Defendants sent to ECI a second memorandum

("2005 memo"), which discussed newly-adopted monetary penalties for not disclosing an abusive tax

shelter in Form 8886 but reiterated the previous strategy of filing an amended tax return.  (Compl.

¶ 204.)

Plaintiffs allege that in 2005, the IRS began a nationwide audit campaign focused on abusive

412(i) plans.  (Compl. ¶ 206.)  Bryan Cave Defendants agreed to represent some Plaintiffs with

respect to their IRS audits.  (Compl. ¶¶ 206, 207.)  Plaintiffs claim that Bryan Cave Defendants did

not "acknowledge, address, seek, or obtain informed consent" to the conflict of interest from Bryan

Cave's involvement in the Pendulum Plan or Bryan Cave's simultaneous representation of ECI and

its agents.  (Compl. ¶ 207.)  Moreover, the Complaint alleges that Bryan Cave failed to adequately

advise the represented Plaintiffs of their legal rights as to the IRS audit and against Defendants. (Compl. ¶¶ 209-10.)  As a result of the IRS audits, Plaintiffs have sustained (or will sustain) audit-related fees, penalties, and "significant tax liability."  (Compl. ¶ 206.)

In September 2008, Plaintiffs filed this lawsuit against Defendants.  The Complaint asserts against Defendants five counts: Count One (civil conspiracy), Count Two (unjust enrichment), Count Three (negligent misrepresentation), Count Four (aiding and abetting common-law fraud), and Count Five (exemplary damages).  Bryan Cave Defendants have moved to dismiss Counts One through Four under Federal Rules of Civil Procedure 12(b)(6) and 9(b).  After setting forth the applicable legal standards, the Court will address Bryan Cave Defendants' arguments in support of the Motion to Dismiss and Plaintiffs' arguments in opposition.

## II.

## LEGAL STANDARD

### A.    Law Applicable in MDL Cases

This action is before the Court as a result of a forum transfer by the Multidistrict Litigation Panel.  Therefore, as to matters of state law, the Court is bound to apply the state law of the transferor forum.  15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure ("Wright & Miller"), § 3866 at 528-29 (2007) (citing *In re Air Disaster at Ramstein Air Base*, 81 F.3d 570, 576 (5th Cir. 1996) and *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993) (other citations omitted)).  As to matters of federal law, however, the Court applies the law of the transferee court.  *Menowitz*, 99 F.2d at 40 (citing *In re Korean Air Lines Disaster*, 829 F.2d 1171, 1175 (D.C. Cir. 1987) (other citations omitted)).

As this case was originally filed in Arizona federal district court, the Court applies

Arizona state substantive law as to matters of state law.  *See* Wright & Miller, § 3866 at 528-29

(and cases cited therein).  On the other hand, because pleading requirements are purely matters

of federal law, the Court looks to the law of this Court and this Circuit for the controlling Rule

12(b)(6) and Rule 9(b) standards.  *See Prudential Ins. Co. of Am. v. Clark Consulting, Inc.*, 548 F.

Supp. 2d 619, 623 (N.D. Ill. 2008) (explaining that, as an initial matter, pleading requirements in

federal courts are governed by the federal rules and not by state law).

**B.     Rule 12(b)(6) Standard**

    In analyzing a motion under Rule 12(b)(6), the Court accepts all well-pleaded facts as

true, viewing them in the light most favorable to the plaintiff.  *Martin K. Eby Constr. Co. v. Dallas*

*Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). The motion should be granted only if the

complaint does not include "enough facts to state a claim to relief that is plausible on its face."

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007).  A claim must be "nudged . . . across

the line from conceivable to plausible."  *Id.*  "A pleading that offers 'labels and conclusions' or 'a

formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 129 S.Ct.

1937, 1950 (2009) (quoting *Twombly*, 550 U.S. at 555).  "Factual allegations must be enough to

raise a right to relief above the speculative level . . . ." *Southwestern Bell Tel., LP v. City of*

*Houston*, 529 F.3d 257, 260 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

**C.     Rule 9(b) Standard**

    A dismissal for failure to plead with particularity in accordance with Federal Rule of Civil

Procedure 9(b) is treated as a Rule 12(b)(6) dismissal for failure to state a claim.  *Lovelace v.*

*Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).  Rule 9(b) provides, in pertinent

part, that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or

mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The amount of particularity required for pleading fraud differs from case to case. *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003); *see also Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (noting that "courts have emphasized that Rule 9(b)'s ultimate meaning is context-specific"). In the Fifth Circuit, the Rule 9(b) standard requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Southland Secs. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004). In other words, the complaint must provide "the essentials of the first paragraph of any newspaper story." *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994).

### III.

### ANALYSIS

Bryan Cave Defendants have filed a motion to dismiss Counts One through Four for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6) and 9(b). Bryan Cave Defendants contend that Plaintiffs' claims should be dismissed pursuant to Rule 12(b)(6), because (1) Plaintiffs have failed to state sufficient facts to determine choice of law, (2) all claims are time-barred under the applicable Arizona statute of limitations, and (3) Plaintiffs have failed to state a claim upon which relief may be granted. In addition, as to the fraud-based claims, Bryan Cave Defendants argue that they should be dismissed under Rule 9(b) for failure to plead fraud with the required particularity. Accordingly, the Court will address each issue in turn after preliminarily addressing the choice of law issues before the court.

A.      **Choice of Law**

The Court must determine which state's substantive law to apply to the causes of action.

Because choice of law is substantive law, the Court applies Arizona state law to determine choice

of law.  The Arizona Supreme Court uses the Restatement (Second) of Conflict of Laws' "most

significant relationship" test to decide choice of law.  *Gemstar Ltd. v. Ernst & Young*, 917 P.2d

222, 229 (Ariz. 1996) (citation omitted); *Bates v. Super. Ct.*, 749 P.2d 1367, 1370 (Ariz. 1988).

In determining which state has the "most significant relationship," the Court considers four

factors for a tort: (1) the place where the injury occurred; (2) the place where the conduct

causing the injury occurred; (3) the residence and/or place of incorporation of the parties; and

(4) the place where the relationship between the parties is centered.  Restatement (Second)

Conflict of Laws § 145(2).  The factors are evaluated primarily qualitatively, not quantitatively.

*Schwartz v. Schwartz*, 447 P.2d 254, 257 (Ariz. 1968).

Based on their briefs, Plaintiffs ostensibly assume that Arizona law applies to all claims of

every Plaintiff.  The Court, however, is unconvinced that this is the case.  With respect to the

third factor of the "most significant relationship" test, Plaintiffs are residents of seven different

states (Arizona, California, Colorado, Illinois, Utah, Washington, Wisconsin).  On the other

hand, Bryan Cave Defendants are residents of Arizona.  The three remaining factors of the test

also indicate that each of the seven resident states' laws applies, because the Complaint gives no

indication that Plaintiffs ever left their resident states to meet and transact with Defendants.

While a consideration of these factors seemingly yields an uncertain choice of law, the Court will

proceed with evaluating the legal sufficiency of the claims to the extent that the states' laws are

substantially identical.  *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 452 (5th Cir. 2001)

(evaluating motion to dismiss under the laws of both potentially applicable states).  The Court cautions, however, that its present analysis of the state laws is only deep enough to address the facial pleadings in the context of a motion to dismiss.  A more detailed inquiry–which may reveal additional differences among the laws–will likely be required to rule on a motion for summary judgment or other future motions.

**B.     Statute of Limitations**

Bryan Cave Defendants move to dismiss this case pursuant to Rule 12(b)(6), arguing that Plaintiffs' claims are time-barred under Arizona law.  Specifically, Bryan Cave Defendants assert that the fraud-based claims–civil conspiracy, unjust enrichment, and aiding and abetting fraud–are subject to a three-year limitations period and the negligent misrepresentation claim is subject to a two-year limitations period.  *See* Ariz. Rev. Stat. Ann. §§ 12-542, 543 (2008).  (Mot. Dismiss 7.)  Bryan Cave Defendants contend that Plaintiffs' limitations period commenced when Plaintiffs detrimentally relied on Defendants' alleged misrepresentations by establishing defined benefit plans and purchasing insurance policies to fund those same plans.  (Mot. Dismiss 9.) Bryan Cave Defendants argue that all Plaintiffs had relied by March 2004.  (Mot. Dismiss 11 n.5.)

In the alternative, Bryan Cave Defendants argue that Plaintiffs' limitations period commenced no later than February 13, 2004, which is when Plaintiffs discovered or should have discovered their claims against Defendants due to the IRS press release, rulings, and proposed regulation on 412(i) plans.  (Mot. Dismiss 12.)  Under either scenario, Bryan Cave Defendants maintain that all claims were time-barred by the time the suit was filed in September 2008–over four years after the start of either limitations period.  (Mot. Dismiss 9.)

Plaintiffs counter that their claims did not accrue until they had knowledge of the tort–not just the injury–and knowledge of the person who caused the tort.  (Pls.' Resp. 25.)  This, Plaintiffs posit, is a factual determination that a jury should decide.  (Pls.' Resp. 27.)

Under Arizona law, "a cause of action does not accrue for purposes of the statute of limitations until the plaintiff knows, or with reasonable diligence should know, the facts underlying the cause of action." *Karlsson Group, Inc. v. Langley Farm Invs., LLC*, No. CV-07-0457, 2008 WL 4183025, at *6 (D. Ariz. Sept. 8, 2008) (citing *Doe v. Roe*, 955 P.2d 951, 960 (Ariz. 1998) (plaintiff "need not know all of the facts underlying a cause of action to trigger accrual [but] . . . must . . . possess minimum knowledge sufficient to identify both that a wrong occurred and that it caused injury")); *Taylor v. State Farm Mut. Auto. Ins.*, 913 P.2d 1092, 1096 (Ariz. 1996).  Often the determination of when a plaintiff should have reasonably discovered a cause of action for limitations purposes is a fact-intensive inquiry which must be reserved for a jury.  *Doe*, 955 P.2d at 961 (citations omitted).

The Court recently addressed an analogous situation in a related case and concluded that determining when the statute of limitations commenced could not be decided by a motion to dismiss:

> In sum, in order to properly decide this fact-bound question of when the Plaintiffs knew or reasonably should have known of their claims, the Court must be able to examine proof not proper via Rule 12(b)(6) and, perhaps not even permissible on summary judgment.  The Court will entertain the issue under Rule 56 but instructs the parties that, ultimately, the resolution of the limitations question may require credibility determinations by the fact-finder.

*Hildebrandt v. Indianapolis Life Ins. Co.*, No. 3:08-CV-1815, 2009 WL 804123, at *5 (N.D. Tex. Mar. 26, 2009).  Here, the Court reaches the same conclusion and accordingly, the Court

**DENIES** Bryan Cave Defendants' Motion to Dismiss to the extent it is based on the Arizona statute of limitations.

## C.      Count One: Civil Conspiracy

Bryan Cave Defendants argue that Count One should be dismissed under Rules 12(b)(6) and 9(b).  Plaintiffs made no response on this point in the Response brief.

To state a civil conspiracy claim under Arizona law, Plaintiffs must allege facts to support the following: "two or more people must agree to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages."  *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 36 (Ariz. 2002)(citations omitted).[5]  As suggested above, civil conspiracy is not a stand-alone claim but also requires an underlying tort, which the conspirators agreed to accomplish.  *Baker v. Stewart Title & Trust of Phoenix*, 5 P.3d 249, 259 (Ariz. Ct. App. 2000).  The Court will first consider Bryan Cave Defendants' 12(b)(6) arguments before turning to its 9(b) arguments.

Under 12(b)(6), Bryan Cave Defendants challenge the Complaint for failing to state a civil conspiracy claim, arguing that the Complaint does not adequately plead facts to support the claim and that the claim is wholly conclusory.  (Mot. Dismiss 17.)  As discussed earlier, to survive a 12(b)(6) motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face."  The Complaint alleges that "Defendants, upon information and belief, agreed to join in a conspiracy," "Defendants, upon information and belief, had a meeting

---

[5]The standards of the other applicable states are similar.  *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 457, 459 (Cal. 1994); *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989); *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994); *Waddoups v. Amalgamated Sugar Co.*, 54 P.3d 1054, 1064 (Utah 2002); *Wilson v. State*, 929 P.2d 448, 459 (Wash. Ct. App. 1996) (citation omitted); *Onderdonk v. Lamb*, 255 N.W.2d 507, 509 (Wis. 1977) (citation omitted).

of the minds on the object of or course of action for this conspiracy," and "Defendants knew and agreed upon the unlawful object and purpose of this conspiracy." (Compl. ¶¶ 219, 221.)  After carefully reviewing the Complaint, the Court concludes that Plaintiffs have failed to state a civil conspiracy claim.  The Complaint lacks factual allegations to plausibly support that Defendants conspired together to design, market, and sell the illegal plans and policies.  Even considering the allegations in the light most favorable to Plaintiffs, the Court cannot accept what is essentially a formulaic recitation of the elements of civil conspiracy.  Similar to *Twombly*, the Court finds nothing in the Complaint that intimates that the Insurance Companies and Defendants' actions were anything more than each party's independent free-market behavior, rather than the product of an agreement.  550 U.S. at 566.

In particular, the Complaint lacks well-pleaded facts to support that an agreement was ever made.  In *Twombly,* the Supreme Court expressed doubt that Rule 8 notice was provided by the pleadings, because they did not include the "specific time, place, or person involved" in the alleged conspiracy.  550 U.S. at 565 n.10.  Here, the Complaint fails to provide such information.  For example, in alleging the agreement of the conspiracy, Plaintiffs allege that "[i]n the late 1990s, Defendants formulated a structure for an abusive tax shelter" and "ECI and Defendants proceeded to work together . . . ."  (Compl. ¶¶ 48, 58.)  These allegations fail to address important information about the alleged meetings, such as which specific Defendants were present and the specific time (or any time period at all in the case of the second allegation).  It is impractical to expect that Bryan Cave Defendants have sufficient notice based on these bare allegations.  The Court determines that Plaintiffs have not pleaded the factual specificity to push the conspiracy claim above the speculative level from conceivable to plausible.  *Twombly*, 550

U.S. at 570; *Love Terminal Partners, LP v. City of Dallas*, 527 F. Supp. 2d 538, 554 (N.D. Tex. 2007) (dismissing conspiracy claim in antitrust case under 12(b)(6) for insufficient factual pleading where allegations stated that the parties "were already secretly discussing," "Defendants had the parameters of their illegal combination in place," and "Defendants had agreed the [object of their conspiracy] should be destroyed."). As a result, the Court **GRANTS** the Motion to Dismiss Count One.

Bryan Cave Defendants also argue that the civil conspiracy claim should be dismissed for failing to meet 9(b) particularity. (Mot. Dismiss 18-19.) The Court agrees. To sufficiently plead the conspiracy claim, Plaintiffs must plead both conspiracy and the underlying tort, which the conspirators agreed to accomplish. *Askanase v. Fatjo*, 130 F.3d 657, 676 (5th Cir. 1997) (dismissing fraud-based conspiracy claim, because underlying fraud claim was not sufficiently pleaded). Here, the underlying tort of civil conspiracy is fraud, which must be pleaded with particularity in accordance with Rule 9(b). *Id.* This requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when, and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Southland Secs. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004). In other words, the complaint must provide "the essentials of the first paragraph of any newspaper story." *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994).

After reviewing the Complaint, the Court does not find facts that show on which misrepresentations Plaintiffs are basing the civil conspiracy claim and underlying fraud claim. The Court could reasonably conclude that the misrepresentations at issue include the Bryan Cave Letter, the 2004 memo, the 2005 memo, and any alleged statement made by any

Defendant.  Because the Court encounters such uncertainty at the early stage of the 9(b)

analysis, it does not proceed with the full analysis.  However, any misrepresentation that is the

basis for the underlying fraud claim must meet the standards explained above.  Accordingly,

Plaintiffs' failure to state a claim for the underlying fraud provides a separate basis on which the

Court **GRANTS** the Motion to Dismiss Count One.

D.     **Count Two: Unjust Enrichment**

Bryan Cave Defendants move to dismiss Count Two under Rule 12(b)(6), because the

Complaint fails to state a claim for unjust enrichment.  Unjust enrichment is characterized by

five elements: (1) an enrichment; (2) an impoverishment; (3) a connection between the

enrichment and the impoverishment; (4) absence of justification for the enrichment and the

impoverishment and (5) an absence of a remedy provided by law.  *City of Sierra Vista v. Cochise*

*Enter., Inc.*, 697 P.2d 1125, 1132 (Ariz. Ct. App. 1984).[6]

Under 12(b)(6), Bryan Cave Defendants argue that the Complaint fails to allege facts

showing that they benefitted at Plaintiffs' expense.  (Mot. Dismiss 19-20.)  Here, the Complaint

alleges that Defendants received "significant monetary remuneration in the form of fees from the

marketing and selling of the insurance policies to the detriment of Plaintiffs" and also that

"Defendants reaped substantial additional fees for each of these individual engagements."

(Compl. ¶ 66, 226.)  Viewing well-pleaded facts in the most favorable light as it must, the Court

---

[6]The substantive laws of the possible states are substantially similar to Arizona law with the
exception of California law.  *DCB Constr. Co. v. Cent. City Dev. Co.*, 965 P.2d 115, 119-120 (Colo. 1998);
*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672 (Ill. 1989) ; *Concrete Prods. Co. v.
Salt Lake County*, 734 P.2d 910, 911 (Utah 1987) (citation omitted); *Young v. Young,* 191 P.3d 1258, 1262
(Wash. 2008); *S & M Rotogravure Serv. Inc. v. Baer*, 252 N.W.2d 913 (Wis. 1977).  California law does not
recognize unjust enrichment as a cause of action.  *McKell v. Wash. Mut., Inc.*, 49 Cal. Rptr. 3d 227, 254
(Ct. App. 2006); *Melchior v. New Line Prods., Inc.*, 131 Cal. Rptr. 2d 347, 357 (Ct. App. 2003).

concludes that these allegations sufficiently state an unjust enrichment claim.

Bryan Cave Defendants further argue that the unjust enrichment claim should be dismissed, because the Complaint fails to allege a fraud claim. (Reply 8.) In support of the argument, Bryan Cave Defendants rely on the Court's recent opinion in a related case involving many of the same Plaintiffs. *Berry v. Indianapolis Life Ins. Co.*, 600 F. Supp. 2d 805, 827 (N.D. Tex. 2009). *Berry*, however, is distinguishable from the current case. In *Berry*, the plaintiffs brought unjust enrichment and fraud claims against the Insurance Companies. *Id.* The Court dismissed the unjust enrichment claim, because it was considered dependent on successfully pleading the fraud claim, which was not sufficiently pleaded. *Id.* In other words, because the fraud claim was not sufficiently pleaded, the unjust enrichment claim–as a result of its dependence–also was not sufficiently pleaded. This dependence between the claims exists, as the Court explained, where an *express contract* and *fraud are involved. Id.* (emphasis added) This is not the present case, because no express contract has been alleged to have existed between Bryan Cave Defendants and Plaintiffs. As a result, any failure to allege fraud does not require dismissing the unjust enrichment claim.

Finally, Bryan Cave Defendants argue that dismissal is proper, because California law does not recognize unjust enrichment as a cause of action.[7] (Mot. Dismiss 20 n.10.) The Court agrees. Under California state law, unjust enrichment is a remedy, not a cause of action. *McKell v. Wash. Mut., Inc.*, 49 Cal. Rptr. 3d 227, 254 (Ct. App. 2006) (noting that "there is no cause of

---

[7]Bryan Cave Defendants also claim that Illinois state law does not recognize unjust enrichment as a cause of action. (Mot. Dismiss 20 n.10.) Although some Illinois cases set forth such a claim, the majority of Illinois state law supports unjust enrichment as a cause of action. *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 678-79 (Ill. 1989); *Peddinghaus v. Peddinghaus*, 692 N.E.2d 1221, 1225 (Ill. App. 1998).

action for unjust enrichment" under California law); *Melchior v. New Line Prods., Inc.*, 131 Cal. Rptr. 2d 347, 357 (Ct. App. 2003 ("[u]njust enrichment is a general principle, underlying various legal doctrines and remedies, rather than a remedy itself . . . [and] is synonymous with restitution").  Because unjust enrichment is not a cause of action in California, the Court **GRANTS** the Motion to Dismiss the unjust enrichment claim as to any Plaintiffs that California law applies to (DP Search, Sarmiento, PHR, Pekerol, Valley Vista, DeSalvo, BEK).  If the California Plaintiffs are ultimately successful on their other causes of action, they may seek unjust enrichment as a remedy.  As to the remaining Plaintiffs, the Court **DENIES** the Motion to Dismiss Count Two.

**E.    Count Three: Negligent Misrepresentation**

Bryan Cave Defendants move to dismiss Count Three for negligent misrepresentation as to the Bryan Cave Letter under Rules 12(b)(6) and 9(b).  After setting out the legal standard, the Court addresses the 12(b)(6) and 9(b) arguments for dismissal.  In Arizona, negligent misrepresentation occurs when:

> [o]ne who, in the course of business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co.*, 742 P.2d 808, 813 (Ariz. 1987) (applying the Restatement (Second) of Torts, § 552(1)).[8]  Such a claim may be based on either affirmative

---

[8]Other relevant states' laws on negligent misrepresentation are similar to Arizona law.  *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 70 Cal. Rptr. 3d 199, 215 (Ct. App. 2007); *Bedard v. Martin*, 100 P.3d 584, 592 (Colo. App. 2004); *First Midwest Bank v. Stewart Title Guar. Co.*, 843 N.E.2d

misrepresentations or omissions.  *See, e.g., Alaface v. Nat'l Inv. Co.*, 892 P.2d 1375, 1387 n.3 (Ariz. Ct. App. 1994) ("[n]egligent misrepresentation may be by omission or nondisclosure of materials facts as well as by overt misrepresentation.").

Bryan Cave Defendants argue that the Complaint fails to state a negligent misrepresentation claim under 12(b)(6) in several respects.  First, Bryan Cave Defendants contend that the Complaint does not allege any communication between Plaintiffs and Bryan Cave Defendants prior to establishing the Pendulum Plans.  (Mot. Dismiss 21.)  Second, they argue that there is no factual basis for reliance on any misrepresentation allegedly made by Bryan Cave Defendants in the Bryan Cave Letter.  (Mot. Dismiss 22.)  Last, Bryan Cave Defendants assert that the Complaint does not allege that the Bryan Cave Letter contained any false statements (or omissions) of fact. (Mot. Dismiss 21-22.)  The Court will consider each argument in turn.

First, Bryan Cave Defendants assert that the Complaint fails to allege that Plaintiffs and Bryan Cave Defendants communicated prior to Plaintiffs establishing the Pendulum Plans and buying the underlying policies.  (Mot. Dismiss 20.)  Without alleged contact before purchasing and establishing the plan, Bryan Cave Defendants posit that the negligent misrepresentation claim fails.  The Court disagrees.  The Complaint alleges that "Defendants provided the [Bryan Cave Letter] . . . and other representations for the express purpose, and with the express understanding, that ECI and the Insurance Companies would be using such representations in

---

327, 335 (Ill. 2006); *Price-Orem Inv. Co. v. Rollins, Brown and Gunnell, Inc.,* 713 P.2d 55, 59 (Utah 1986); *Transamerica Title Ins. Co. v. Johnson,* 693 P.2d 697, 702 (Wash. 1985); *Malzewski v. Rapkin,* 723 N.W.2d 156, 163 (Wis. Ct. App. 2006).

order to promote, market, and sell the Pendulum Plan and similar plans, as well as the insurance

policies used to fund these plans." (Compl. ¶ 231.)  Such facts are sufficient to allege that

contact occurred between Plaintiffs and Bryan Cave Defendants prior to Plaintiffs establishing

the plan and buying the policies.

Second, Bryan Cave Defendants contend that the reliance element fails, because they did

not know Plaintiffs existed at the time the Bryan Cave Letter was distributed.  (Mot. Dismiss 21.)

The Court is unpersuaded by this argument.  The Restatement (Second) of Torts, § 552

explains: "it is not necessary that the maker should have any particular person in mind as the

intended, or even the probable, recipient of the information . . . . It is enough that . . . the maker

of the representation knows that his recipient intends to transmit the information to a similar

person, persons, or group."  Comment h.  Here, the Complaint alleges that Bryan Cave provided

the letter to ECI and that Bryan Cave Defendants knew that ECI was going to use it in the

design, marketing, and sale of the plans and policies to third parties.  (Compl. ¶¶ 55, 65, 231.)

Thus, even if Bryan Cave Defendants did not know Plaintiffs existed when distributing the Bryan

Cave Letter, reliance can still be sufficiently alleged.

Bryan Cave Defendants also argue that the reliance elements fails in light of the express

disclaimers contained in the Bryan Cave Letter.  (Mot. Dismiss 22-23.)  Specifically, Bryan Cave

Defendants claim that the Bryan Cave Letter contained several express disclaimers, including:

that the letter was limited to ECI, that Bryan Cave had not considered whether the plan was

appropriate in a specific scenario, that the opinion may not be appropriate for every employer,

and that employers should consult with tax advisors.  (Mot. Dismiss 23.)  At the motion to

dismiss stage, the Court will not conduct a factual inquiry as to whether Plaintiffs' alleged

reliance on the Bryan Cave Letter was reasonable in spite of the express disclaimers.  *See Kealy v. Carolina Cas. Ins. Co.*, No. CV-05-0911, 2007 WL 158734, at *3 (D. Ariz. Jan. 16, 2007) (explaining that whether waiver of legal rights is effective rests on circumstances of waiver); *Dawson v. Withycombe*, 163 P.3d 1034, 1048 (Ariz. Ct. App. 2007) (courts will not enforce agreement waiving reliance on representations where agreements were induced by fraud or misconduct).

    As their final 12(b)(6) argument, Bryan Cave Defendants assert that the Complaint fails to allege an actionable misrepresentation, because the Bryan Cave Letter does not contain any false statements (or omissions) of fact.  Bryan Cave Defendants have stated the general rule that to be an actionable misrepresentation, it must be a misstatement of fact, not of opinion or future conduct.  *Borba v. Thomas*, 138 Cal. Rptr. 565, 570 (Ct. App. 1977).  Although several exceptions to this general rule exist,[9] as this Court has recently stated, the exceptions do not apply in certain cases where someone "[relies] on a prediction of future IRS enactment, enforcement, or non-enforcement of the law by someone unaffiliated with the federal government."  *Berry v. Indianapolis Life Ins. Co.*, 600 F. Supp. 2d 805, 820 n.19 (N.D. Tex. 2009). In such cases, reliance is inherently unreasonable and an untenable basis for misrepresentation. *Id.*

    Turning to the Bryan Cave Letter at issue, the Complaint alleges that the Bryan Cave Letter stated that "(a) it was 'more likely than not' that the Pendulum Plan would be a qualified

---

[9]The exceptions are: "(1) where a party holds himself out to be specially qualified and the other party is so situated that he may reasonably rely upon the former's superior knowledge; (2) where the opinion is by a fiduciary or other trusted person; [or] (3) where a party states his opinion as an existing fact or as implying facts which justify a belief in the truth of the opinion."  *Borba v. Thomas*, 138 Cal. Rptr. 565, 570 (Ct. App. 1977).

plan under section 412(i) of the Code; (b) it was 'more likely than not' that the specially

designed insurance policy . . . or a 'substantially similar policy' issued by another insurance

company 'can meet the requirements of section 412(i) of the Code' . . .; and (c) the Pendulum

Plan 'should not be considered a tax shelter.'" (Compl. ¶ 55.)  The Court understands the Bryan

Cave Letter to be predicting future IRS treatment and enforcement of the Pendulum Plan as a

qualified 412(i) plan.  Because the Complaint contains no allegations that Bryan Cave

Defendants were in any way affiliated with or had any special knowledge of the IRS, the Court

concludes that any reliance on the Bryan Cave Letter was unjustified.  Accordingly, the Court

**GRANTS** Bryan Cave Defendants' Motion to Dismiss Count Three.

Under 9(b), Bryan Cave Defendants argue that the negligent misrepresentation claim

fails, because it is not pleaded with the requisite particularity.  By its own terms, 9(b) does not

apply to negligent misrepresentation claims.  *Benchmark Elecs. v. J.M. Huber Corp.*, 343 F.3d 719,

723 (5th Cir. 2003)  The Fifth Circuit, however, has recognized that 9(b)'s particularity

requirement operates on negligent misrepresentation claims in limited cases where "the parties

have not urged a separate focus on the negligent misrepresentation claims."  *Id.* (evaluating

negligent misrepresentation under 9(b) in part because both fraud claim and negligent

misrepresentation claim were "based on the same set of alleged facts"); *see also Biliouris v.

Sundance Res., Inc.*, 559 F. Supp. 2d 733, 737 (N.D. Tex. 2008) (dismissing negligent

misrepresentation claim that was based on the same operative facts as an insufficient fraud

claim); *Kougl v. Xspedius Mgmt. Co.*, No. 3:04-CV-2518, 2005 WL 1421446, at *5-6 (N.D. Tex.

June 1, 2005)(dismissing negligent misrepresentation claim that restated the same factual basis as

a fraud claim for failure to satisfy 9(b)).

- 20 -

In the instant case, the Court finds that Rule 9(b) is not applicable to the negligent misrepresentation claim, because Plaintiffs have brought a claim for negligent misrepresentation, but not for fraud.  As such, the Court finds that Plaintiffs have "urged a separate focus" and therefore, applies the general rule that Rule 9(b) particularity is not required for negligent misrepresentation claims.  *Benchmark Elecs. v. J.M. Huber Corp.*, 343 F.3d at 723.

In sum, Plaintiffs have not sufficiently pleaded a negligent misrepresentation claim under 12(b)(6), and the Court **GRANTS** Bryan Cave Defendants' Motion to Dismiss Count Three as to the Bryan Cave Letter.

## F.    Count Four: Aiding and Abetting Common-Law Fraud

In Count Four, Plaintiffs allege that Defendants aided and abetted the nonparty Insurance Companies in committing common-law fraud against Plaintiffs.  Bryan Cave Defendants have moved to dismiss Count Four for failure to allege facts showing an aiding and abetting claim under Rule 12(b)(6), and for failure to allege the underlying fraud with the requisite particularity under Rule 9(b).  The Court discusses the applicable legal standard and Bryan Cave Defendants' 12(b)(6) and 9(b) arguments in turn.

Arizona law recognizes the civil claim of aiding and abetting, "where a person who aids and abets a tortfeasor is himself liable for the resulting harm to a third person."  *Gemstar Ltd. v. Ernst & Young*, 901 P.2d 1178, 1189 n.7 (Ariz. Ct. App. 1995), *vacated on other grounds*, 917 P.2d 222 (Ariz. 1996).  Aiding and abetting requires a showing of three elements: (1) that the primary tortfeasor committed a tort that injures the plaintiff; (2) the defendant knew that the primary tortfeasor's conduct constituted a tort; and (3) the defendant substantially assisted or encouraged the primary tortfeasor in conducting the tort.  *Dawson v. Withycombe*, 163 P.3d 1034, 1052 (Ariz.

Ct. App. 2007) (citations omitted).[10]  The knowledge requirement may be inferred by "showing [defendant's] general awareness of the primary tortfeasor's fraudulent scheme."  *Id.*

Bryan Cave Defendants' first grounds for dismissal of the aiding and abetting claim are that Plaintiffs failed to allege sufficient facts to support two elements of aiding and abetting: the knowledge element and the substantial assistance element.  After reviewing the Complaint, the Court concludes that the Complaint states facts to support the two challenged elements.  The Complaint alleges that "Defendants knowingly and substantially assisted in and/or encouraged this fraud through . . . creating and designing the Pendulum Plan; providing the [Bryan Cave Letter] . . . ; authorizing and/or allowing ECI and the Insurance Companies to use the [Bryan Cave Letter] . . . ."  (Compl. ¶ 240.)  Moreover, the knowledge element "may be averred generally" and "such knowledge may be inferred from the circumstances."  *YF Trust v. JP Morgan Chase Bank*, No. 07-567, 2008 WL 821856, at *5 (D. Ariz. Mar. 26, 2008).  In light of *Twombly*, the Court finds that the Complaint sufficiently alleges facts supporting the knowledge and substantial assistance elements of an aiding and abetting claim.

In pleading a claim for aiding and abetting, Plaintiffs must also plead the underlying tort allegedly committed by the primary tortfeasors.  *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 23 (Ariz. 2002).  In the present case, the primary tortfeasors are identified as the Insurance Companies and the underlying tort is common-law fraud.  (Compl. ¶ 239.)  Because the underlying tort is fraud, it must be pleaded

---

[10]Along with Arizona, Colorado and California recognize the civil claim of aiding and abetting common-law fraud.  *River Colony Estates Gen. P'ship v. Bayview Fin. Trading Group, Inc.*, 287 F. Supp. 2d 1213, 1225 (S.D. Cal. 2003); *Sender v. Mann*, 423 F. Supp. 2d 1155, 1175 (D. Colo. 2006).  Illinois, Washington, Wisconsin, and Utah do not recognize the claim.

with 9(b) particularity.  *Id.*  This requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when, and why the statements were made, and an explanation of why they were fraudulent."  *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Southland Secs. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004).  In other words, the complaint must provide "the essentials of the first paragraph of any newspaper story."  *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994).

Plaintiffs have not sufficiently alleged the underlying fraud claim.  The Complaint properly identifies the Insurance Companies' agents as the ones who made the allegedly fraudulent statements about the Pendulum Plan and the insurance policies.  (Compl. ¶¶ 69, 76, 84, 101, 110, 119, 128, 136, 145, 153, 161, 169, 178, 186.)  Similarly, the "when,"[11] "where,"[12] and "how"[13] are also sufficiently alleged.  *Id.*  The "why," however, is not.

To properly allege the "why," the Complaint must allege why the statement or omission was false or misleading *at the time made* by the Insurance Companies.  *Plotkin v. IP Axess, Inc.*, 407 F.3d at 696.  The Complaint alleges that in the early 2000s, "the IRS began to focus its scrutiny on [412(i)] plans and policies."  (Compl. ¶ 194.)  In addition, the Complaint also alleges that the IRS took more action against 412(i) plans in the form of presentations, announcements, and rulings, most notably in 2003 and 2004.  (Compl. ¶¶ 195-203.)  Yet none of Plaintiffs' allegations

---

[11]Complaint pleads specific dates that the alleged misrepresentations were made to each Plaintiff. (Compl. ¶¶ 69, 76, 84, 101, 110, 119, 128, 136, 145, 153, 161, 169, 178, 186.)

[12]Complaint pleads the state that the alleged misrepresentations were made to each Plaintiff. (Compl. ¶¶ 72, 79, 87, 104, 113, 122, 131, 139, 148, 156, 164, 172, 181.)

[13]Complaint pleads that the alleged misrepresentations were oral and/or written.  (Compl. ¶¶ 72, 79, 87, 104, 113, 122, 131, 139, 148, 156, 164, 172, 181.)

answer the necessary "why" question.  In the response brief, Plaintiffs argue that the statements

were known to be false due to  "IRS criticism and scrutiny of certain aspects of 412(i) plans.

(Pls.' Resp 5-6, 32.)  IRS criticism and scrutiny alone, however, are insufficient to make

statements false.  The Complaint fails to specify a definitive statement by the IRS that the

relevant defined benefit plans were illegal when the statements were made.  At times, Plaintiffs

appear to rely on the February 13, 2004 IRS rulings and rule to retroactively prove that the

Insurance Companies' prior representations were false when made to Plaintiffs.  Such analysis

fails to provide the necessary explanation as to why each representation was false when made.

Plaintiffs' current allegations in the Complaint do not allege that the plans (and policies) were

illegal when sold or that the representations were false when made.  As a result, the underlying

tort of the aiding and abetting claim has not been properly pleaded.  Accordingly, the Court

**GRANTS** the Motion to Dismiss Count Four.  Four states–Illinois, Washington, Wisconsin, and

Utah–do not recognize aiding and abetting common-law fraud as a cause of action.  As such, the

Court has a second and independent basis to **GRANT** the Motion to Dismiss Count Four as to

Plaintiffs from those four states (AUI, Rocky Mountain, Poulsbo, and Direct Electric).

As a final note, to the extent that Plaintiffs are alleging that any of the misrepresentations

of the primary tortfeasors–the Insurance Companies–are forward-looking or are opinions as to

how the IRS would treat 412(i) plans in the future, the Court finds those opinions unactionable

as the basis for aiding and abetting's underlying fraud claim under the current circumstances.

Each statement allegedly made by the Insurance Companies is a statement regarding federal

income tax law or policy, including the policies of a third-party government agency–the IRS.  As

a matter of law, any alleged representation or prediction by the Insurance Companies as to how

the IRS would treat the 412(i) plans, and the funding thereof, in the future is either unactionable opinion or was unjustifiably relied upon in connection with a fraud claim. *Dawson v. Withycombe*, 163 P.3d 1034, 1047 (Ariz. Ct. App. 2007) (finding statements regarding company's future financial prospects unactionable as bases for fraud); *Lidecker v. Kendall Coll.*, 550 N.E.2d 1121, 1125 (Ill. Ct. App. 1990) (finding assurances made to prospective students that nursing program would become accredited to be unactionable as prediction about future). There are no allegations that the Insurance Companies or any of its agents had any special knowledge or ability to control the IRS enactment or enforcement of its policies related to section 412(i).

## IV.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion to Dismiss Complaint and Brief in Support (doc. 46). The Court **GRANTS** the Motion to Dismiss as to Count One, Count Two (for California Plaintiffs only), Count Three as to the Bryan Cave Letter, and Count Four of Plaintiffs' Complaint. The Court **DENIES** the Motion to Dismiss as to Count Two (for non-California Plaintiffs).

The Court does not take lightly dismissal of a claim without reaching its merits. Thus, a plaintiff will be given the opportunity to amend a complaint where it appears that more careful or detailed drafting might overcome the deficiencies on which dismissal is based. *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (noting that a court may dismiss a claim for failing to comply with Rule 9(b), but "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead particularity after being afforded repeated opportunities to do so."); *Hitt v. City of Pasadena*, 561 F.2d 606, 608-09 (5th Cir. 1977) (observing that a

complaint should only be dismissed under Rule 12(b)(6) "after affording every opportunity for the plaintiff to state a claim upon which relief can be granted."). Moreover, Plaintiffs in this case have specifically requested the opportunity to replead. (Pls.' Resp. 42-43.)

If Plaintiffs are able to replead any Counts to overcome all of the grounds stated herein for dismissal, they should do so by no later than twenty (20) days from the date of this Order. Further, any repleading shall be accompanied by a synopsis of no more than five (5) pages, explaining how the amendments overcome the grounds stated herein for dismissal. Should Plaintiffs replead, Bryan Cave Defendants are hereby granted leave to file a response to Plaintiffs' synopsis. Any such response shall not exceed five (5) pages and must be filed within ten (10) calendar days of the repleading. No further briefing will be permitted.

SO ORDERED.

DATED May 11, 2010

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE