UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN BERRY, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:08-CV-2035-B |
| | § | |
| BRYAN CAVE LLP, et al., | § | (Part of MDL No. 1983; Formerly |
| | § | No. CV 08-1768-MHM in the |
| Defendants. | § | District of Arizona) |

**MEMORANDUM OPINION AND ORDER**

This case involves a pension plan and is before the Court as a result of a forum transfer from an Arizona federal district court to this Court by the Multidistrict Litigation Panel.  Before the Court is Defendant's–American Express Tax and Business Services Inc.'s (d/b/a Actuarial and Administrative Services Inc. and/or AAS Pension Services)–Motion to Dismiss Plaintiffs' Complaint (doc. 42), filed December 31, 2008.  Having considered the parties' briefings, the Court finds the motion should be and hereby is **GRANTED in part** (doc. 42) and **DENIED in part** (doc. 42).

**I.**

**BACKGROUND**

This putative class-action lawsuit arises from a dispute related to the design, marketing, and sale of life-insurance policies used to fund a defined benefit pension plan.[1] (Compl. ¶ 1.)

---

[1]The background facts are derived from Plaintiffs' Complaint ("Complaint") (doc. 1), filed September 26, 2008, and on undisputed facts gleaned from the parties' court papers.  Where there may be a dispute over a stated fact, the Court has so indicated by claiming the fact as one stated by that party to be true.

Plaintiffs[2] are generally individual professionals–such as doctors, dermatologists, and business owners–and the business entities they operate.  (Compl. ¶¶ 5-38.)  Plaintiffs allege that Defendants Bryan Cave LLP, Richard C. Smith, American Express Tax and Business Services Inc.'s (d/b/a Actuarial and Administrative Services Inc. and/or AAS Pension Services) ("Amex"), Pension Strategies, IBP, LLC, and Pension Strategies, LLC[3] (collectively "Defendants") worked with Economic Concepts, Inc. ("ECI")–a pension and financial services firm–to design a 412(i) plan[4] called the Pendulum Plan.  (Compl. ¶ 48.)  The Pendulum Plan was funded by specially-designed life-insurance policies that were created by Defendants and several nonparty life-insurance companies ("Insurance Companies").  (Compl. ¶ 54.)

Plaintiffs were contacted by and later met with agents of the Insurance Companies. (Compl. ¶¶ 69, 76, 84, 101, 110,119, 128, 136, 145, 153, 161.)  During these meetings, Plaintiffs

---

[2]Plaintiffs are the following: Stephen Berry and Fader Higher, LLC (collectively "Fader Higher"); Mehmet C. Pekerol, M.D. and Mehmet C. Pekerol, M.D., P.C. (collectively "Pekerol"); Jamie Hughes, Stanton Greene, and Valley Vista Mortgage, Inc. ("Valley Vista"); Robert P. Young, M.D. and Rocky Mountain Dermatology, Inc. (collectively "Rocky Mountain"); Tyrone M. Seils and DP Search, Inc. (collectively "DP Search"); Robert W. MacMillan and MacMillan Construction Company, Inc. (collectively "MacMillan"); Charles R. Brown, DDS and Poulsbo Children's Dentistry (collectively "Poulsbo"); Yoram Hakimi, Noam Maor, and Pacific Home Remodeling, Inc. (collectively "PHR"); David George, Deborah George, and Audio Book Services, Inc. (collectively "ABS"); David R. Hallman, Lynn Hallman, and Accessibility Unlimited, Inc. (collectively "AUI"); Richard Sarmiento, and Richard Sarmiento and Leilani, a Sole Proprietorship (collectively "Sarmiento"); Douglas A. DeSalvo and Douglas A. DeSalvo Chiropractic, Inc. (collectively " DeSalvo"); Brian E. Kilcourse and BEK Consulting LP (collectively "BEK"); and Thomas A. Johnson and Direct Electric of Wisconsin, Inc. (collectively "Direct Electric").  Former Plaintiffs Hodan Rabile, DDS and Rabile Family Dentistry, P.C. voluntarily dismissed their claims against all Defendants on March 13, 2009.

[3]Plaintiffs dismissed without prejudice their claims against former Defendants Pension Strategies, IBP, LLC and Pension Strategies, LLC on March 12, 2009.

[4]A "412(i) plan" is a defined benefit pension plan created under section 412(i) of the Internal Revenue Code (recodified in 2006 as 26 U.S.C. § 412(e)(3)).  (Compl. ¶ 45.)  Defined benefit plans provide retirement and death benefits to plan participants.  (Id.)

contend that the agents represented the retirement and income tax benefits of the Pendulum Plan as well as its compliance with the IRS.  (Compl. ¶¶ 71-72, 78-79, 86-87, 103-04, 112-13, 121-22, 130-31, 138-39, 147-48, 155-56, 163-64, 171-72, 180-81, 188-89.)  Plaintiffs assert that the agents never disclosed the risks associated with the Pendulum Plan and its life-insurance policies.  (Compl. ¶¶ 68, 75, 80, 89, 106, 115, 124, 132, 141, 149, 157, 165, 174, 182, 190.)  Ultimately, Plaintiffs established Pendulum Plans and purchased life-insurance policies from the Insurance Companies to fund the plans.  (Compl. ¶¶ 69-90, 101-191.)

The Complaint alleges that two opinion letters played a prominent role in the design, marketing, and sale of the Pendulum Plan and its policies.  (Compl. ¶¶ 58, 62, 63, 65.)  In September 1999, Defendant Bryan Cave LLP ("Bryan Cave"), an international law firm, delivered a legal opinion ("Bryan Cave Letter") analyzing a specimen life-insurance policy to ECI.  (Compl. ¶ 55.)  The Bryan Cave Letter principally stated that the Pendulum Plan and its specially-designed insurance policies would "more likely than not" qualify as a 412(i) plan.  (Compl. ¶ 55.)  The letter also concluded that the IRS would not consider the Pendulum Plan a tax shelter.  (*Id.*)  The Complaint further alleges that after Amex reviewed the Bryan Cave Letter and the specimen life-insurance policy, Amex provided its own opinion letter ("Amex Letter"), stating that the Pendulum Plan, as funded by the specimen life-insurance policy, "could be administered as a fully qualified 412(i) plan."  (Compl. ¶ 57.)  Defendants allegedly intended for both letters to be relied on by Plaintiffs and others similarly situated.  (Compl. ¶ 231.)

Although Plaintiffs were allegedly never told of any risks associated with the Pendulum Plan, the IRS has for a long time criticized certain aspects of abusive 412(i) plans, like the

Pendulum Plan.  (Compl. ¶ 194.)  Starting in the early 2000s, the IRS began to pay even greater

attention to abusive 412(i) plans.  (Compl. ¶¶ 194-95.)  Despite increased criticism by the IRS

(and Department of Treasury), Defendants did not amend or supplement the Amex Letter,

which the Insurance Companies continued to use in the Pendulum Plan's marketing.  (Compl. ¶

196.)  On February 13, 2004, the IRS issued a press release, two revenue rulings, and proposed

regulations that indicated that the Pendulum Plan and its insurance policies would likely be

considered abusive tax shelters.  (Compl. ¶ 197.)  Plaintiffs purport that beginning in 2005, the

IRS started to audit their Pendulum Plans as abusive tax shelters and as a result, Plaintiffs have

sustained (or will sustain) audit-related fees, penalties, and "significant tax liability."  (Compl. ¶

206.)

        In September 2008, Plaintiffs filed this lawsuit against Defendants.  The Complaint

asserts against Defendants five counts: Count One (civil conspiracy), Count Two (unjust

enrichment), Count Three (negligent misrepresentation), Count Four (aiding and abetting

common-law fraud), and Count Five (exemplary damages).  Amex has moved to dismiss Counts

One through Five under Federal Rules of Civil Procedure 12(b)(6) and 9(b).  After setting forth

the applicable legal standards, the Court will address Amex's arguments in support of the Motion

to Dismiss and Plaintiffs' arguments in opposition.

## II.

## LEGAL STANDARD

### A.      Law Applicable in MDL Cases

        This action is before the Court as a result of a forum transfer by the Multidistrict Litigation

Panel.  Therefore, as to matters of state law, the Court is bound to apply the state law of the

transferor forum. 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure ("Wright & Miller"), § 3866 at 528-29 (2007) (citing *In re Air Disaster at Ramstein Air Base*, 81 F.3d 570, 576 (5th Cir. 1996) and *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993) (other citations omitted)). As to matters of federal law, however, the Court applies the law of the transferee court. *Menowitz*, 99 F.2d at 40 (citing *In re Korean Air Lines Disaster*, 829 F.2d 1171, 1175 (D.C. Cir. 1987) (other citations omitted)).

As this case was originally filed in Arizona federal district court, the Court will apply Arizona state substantive law as to matters of state law. *See* Wright & Miller, § 3866 at 528-29 (and cases cited therein). On the other hand, because pleading requirements are purely matters of federal law, the Court looks to the law of this Court and this Circuit for the controlling Rule 12(b)(6) and Rule 9(b) standards. *See Prudential Ins. Co. of Am. v. Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 623 (N.D. Ill. 2008) (explaining that, as an initial matter, pleading requirements in federal courts are governed by the federal rules and not by state law).

**B.     Rule 12(b)(6) Standard**

In analyzing a motion under Rule 12(b)(6), the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). The motion should be granted only if the complaint does not include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A claim must be "nudged . . . across the line from conceivable to plausible." *Id*. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to

relief above the speculative level . . . ." *Southwestern Bell Tel., LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

**C.    Rule 9(b) Standard**

A dismissal for failure to plead with particularity in accordance with Federal Rule of Civil Procedure 9(b) is treated as a Rule 12(b)(6) dismissal for failure to state a claim. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). Rule 9(b) provides, in pertinent part, that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The amount of particularity required for pleading fraud differs from case to case. *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003); *see also Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (noting that "courts have emphasized that Rule 9(b)'s ultimate meaning is context-specific"). In the Fifth Circuit, the Rule 9(b) standard requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Southland Secs. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004). In other words, the complaint must provide "the essentials of the first paragraph of any newspaper story." *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994).

**III.**

**ANALYSIS**

Amex has filed a motion to dismiss Counts One through Five for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Civil Procedure 9(b). Amex contends that Plaintiffs' claims should be dismissed under Rule 12(b)(6), because (1) Plaintiffs have

failed to state sufficient facts to determine choice of law, (2) all claims are time-barred under the applicable Arizona statute of limitations; and (3) Plaintiffs have failed to state claims upon which relief may be granted.  In addition, Amex argues that all claims should be dismissed under Rule 9(b), because the claims are based on underlying allegations of fraud and misrepresentation and are not pleaded with the required particularity.  Accordingly, the Court will address each issue in turn after preliminarily addressing the choice of law issues before the court.

## A.     Choice of Law

The Court must determine which state's substantive law to apply to the causes of action. Because choice of law is substantive law, the Court applies Arizona state law to determine choice of law.  The Arizona Supreme Court uses the Restatement (Second) of Conflict of Laws' "most significant relationship" test to decide choice of law.  *Gemstar Ltd. v. Ernst & Young*, 917 P.2d 222, 229 (Ariz. 1996) (citation omitted); *Bates v. Super. Ct.*, 749 P.2d 1367, 1370 (Ariz. 1988).  In determining which state has the "most significant relationship," the Court considers four factors for a tort: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the residence and/or place of incorporation of the parties; and (4) the place where the relationship between the parties is centered.  Restatement (Second) Conflict of Laws § 145(2).  The factors are evaluated primarily qualitatively, not quantitatively.  *Schwartz v. Schwartz*, 447 P.2d 254, 257 (Ariz. 1968).

Based on their briefs, Plaintiffs ostensibly assume that Arizona law applies to all claims of every Plaintiff.  The Court, however, is unconvinced that this is the case.  With respect to the third factor of the "most significant relationship" test, Plaintiffs are residents of seven different states (Arizona, California, Colorado, Illinois, Utah, Washington, Wisconsin).  On the other hand, Amex

is a Minnesota corporation that does business in Arizona. The three other factors of the test also indicate that each of the seven resident states' laws applies, because the Complaint gives no indication that Plaintiffs ever left their resident states to meet and transact with Defendants. While a consideration of these factors seemingly yields an uncertain choice of law, the Court will proceed with evaluating the legal sufficiency of the claims to the extent that the states' laws are substantially identical. *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 452 (5th Cir. 2001) (evaluating motion to dismiss under the laws of both potentially applicable states). The Court cautions, however, that its present analysis of the state laws is only deep enough to address the facial pleadings in the context of a motion to dismiss. A more detailed inquiry–which may reveal additional differences among the laws–will likely be required to rule on a motion for summary judgment or other future motions.

## B.      Statute of Limitations

Amex moves to dismiss the entire case under Rule 12(b)(6), arguing that Plaintiffs' claims are time-barred under Arizona law. Amex asserts that Count One (civil conspiracy), Count Two (unjust enrichment), and Count Four (aiding and abetting fraud) are subject to a three-year limitations period, and Count Three (negligent misrepresentation) is subject to a two-year limitations period. *See* Ariz. Rev. Stat. Ann. §§ 12-542, 543 (2008). (Mot. Dismiss 4-8.) According to Amex, the limitations periods commenced when Plaintiffs knew or should have known of the alleged fraud/misrepresentation. Amex contends that this occurred by January 31, 2003 when the IRS allegedly began making public presentations about problems with 412(i) plans. (Mot. Dismiss 5.) Alternatively, Amex purports that the limitations periods commenced on February 13, 2004 when the IRS issued the press release, rulings, and proposed regulation on 412(i) plans. (Mot. Dismiss 5.) Under either scenario, Amex maintains that all claims were time-barred by the time the

suit was filed in September 2008–over four years after the start of either limitations period.   (Mot.

Dismiss 6.)

Plaintiffs counter that their claims did not accrue until they had knowledge of the tort–not

just the injury–and knowledge of the person who caused the tort.   (Pls.' Resp. 25.)   This, Plaintiffs

posit, is a factual determination that a jury should decide.   (Pls.' Resp. 27.)

Under Arizona law, "a cause of action does not accrue for purposes of the statute of

limitations until the plaintiff knows, or with reasonable diligence should know, the facts underlying

the cause of action." *Karlsson Group, Inc. v. Langley Farm Invs., LLC*, No. CV-07-0457, 2008 WL

4183025, at *6 (D. Ariz. Sept. 8, 2008) (citing *Doe v. Roe*, 955 P.2d 951, 960 (Ariz. 1998) (plaintiff

"need not know all of the facts underlying a cause of action to trigger accrual [but] . . . must . . .

possess minimum knowledge sufficient to identify both that a wrong occurred and that it caused

injury")); *Taylor v. State Farm Mut. Auto. Ins.*, 913 P.2d 1092, 1096 (Ariz. 1996).   Often the

determination of when a plaintiff should have reasonably discovered a cause of action for limitations

purposes is a fact-intensive inquiry which must be reserved for a jury. *Doe*, 955 P.2d at 961 (citations

omitted).

The Court recently addressed a similar situation in a related case and concluded that a

determination of when the statute of limitations commenced could not be determined by a motion

to dismiss:

> In sum, in order to properly decide this fact-bound question of when the Plaintiffs
> knew or reasonably should have known of their claims, the Court must be able to
> examine proof not proper via Rule 12(b)(6) and, perhaps not even permissible on
> summary judgment.   The Court will entertain the issue under Rule 56 but instructs
> the parties that, ultimately, the resolution of the limitations question may require
> credibility determinations by the fact-finder.

*Hildebrandt v. Indianapolis Life Ins. Co.*, No. 3:08-CV-1815, 2009 WL 804123, at *5 (N.D. Tex. Mar. 26, 2009).  Here, the Court reaches the same conclusion and accordingly, the Court **DENIES** Amex's Motion to Dismiss to the extent it is based on the Arizona statute of limitations.

## C.     Count One: Civil Conspiracy

Amex moves to dismiss Count One under Rules 12(b)(6) and 9(b), because the Complaint fails to state claims for civil conspiracy and the underlying tort of fraud.  (Mot. Dismiss 12-13.)  To state a civil conspiracy claim under Arizona law, a plaintiff must allege facts to support that "two or more people [agreed] to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages."  *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 36 (Ariz. 2002)(citations omitted).[5]  As suggested above, civil conspiracy is not a stand-alone claim but also requires an underlying tort which the conspirators agreed to accomplish.  *Baker v. Stewart Title & Trust of Phoenix*, 5 P.3d 249, 259 (Ariz. Ct. App. 2000).  The Court will first consider Amex's 12(b)(6) arguments before turning to its 9(b) arguments.

Amex first challenges the Complaint under 12(b)(6) for failing to state a civil conspiracy claim, arguing that Plaintiffs have not adequately pleaded facts to support the claim.  (Mot. Dismiss 12.)  As discussed earlier, to survive a 12(b)(6) motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face."  The Complaint alleges that "Defendants, upon information and belief, agreed to join in a conspiracy," "Defendants, upon

---

[5]The standards of the other applicable states are similar.  *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 457, 459 (Cal. 1994); *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989); *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994); *Waddoups v. Amalgamated Sugar Co.*, 54 P.3d 1054, 1064 (Utah 2002); *Wilson v. State*, 929 P.2d 448, 459 (Wash. Ct. App. 1996) (citation omitted); *Onderdonk v. Lamb*, 255 N.W.2d 507, 509 (Wis. 1977) (citation omitted).

information and belief, had a meeting of the minds on the object of or course of action for this conspiracy," and "Defendants knew and agreed upon the unlawful object and purpose of this conspiracy." (Compl. ¶¶ 219, 221.)  After carefully reviewing the Complaint, the Court concludes that Plaintiffs have failed to state a civil conspiracy claim.  The Complaint lacks factual allegations to plausibly support that Defendants conspired together to design, market, and sell the illegal plans and policies.  Even considering the allegations in the light most favorable to Plaintiffs, the Court cannot accept what is essentially a formulaic recitation of the elements of civil conspiracy.  Similar to *Twombly*, the Court finds nothing in the Complaint that intimates that the Insurance Companies and Defendants' actions were anything more than each party's independent free-market behavior, rather than the product of an agreement.  550 U.S. at 566.

In particular, the Complaint lacks well-pleaded facts to support that an agreement was ever made.  In *Twombly,* the Supreme Court expressed doubt that Rule 8 notice was provided by the pleadings, because they did not include the "specific time, place, or person involved" in the alleged conspiracy.  550 U.S. at 565 n.10.  Here, the Complaint fails to provide such information. For example, in alleging the agreement of the conspiracy, Plaintiffs allege that "[i]n the late 1990s, Defendants formulated a structure for an abusive tax shelter" and "ECI and Defendants proceeded to work together . . . ."  (Compl. ¶¶ 48, 58.)  These allegations fail to address important information about the alleged meetings, such as which specific Defendants were present and the specific time (or any time period at all in the case of the second allegation).  It is impractical to expect that Amex has sufficient notice based on these bare allegations.  The Court determines that Plaintiffs have not pleaded the factual specificity to push the conspiracy claim above the speculative level from conceivable to plausible.  *Twombly*, 550 U.S. at 570; *Love*

*Terminal Partners, LP v. City of Dallas*, 527 F. Supp. 2d 538, 554 (N.D. Tex. 2007) (dismissing

conspiracy claim in antitrust case under 12(b)(6) for insufficient factual pleading where

allegations stated that the parties "were already secretly discussing," "Defendants had the

parameters of their illegal combination in place," and "Defendants had agreed the [object of their

conspiracy] should be destroyed.").  As a result, the Court **GRANTS** the Motion to Dismiss

Count One.

Amex also argues that the civil conspiracy claim should be dismissed for failure to

sufficiently plead the underlying tort of fraud.  (Mot. Dismiss 12, 15.)  To sufficiently plead the

conspiracy claim, Plaintiffs must plead both conspiracy and the underlying tort, which the

conspirators agreed to accomplish.  *Askanase v. Fatjo*, 130 F.3d 657, 676 (5th Cir. 1997)

(dismissing fraud-based conspiracy claim, because fraud claim was not sufficiently pleaded).

Here, the underlying tort of civil conspiracy is fraud, which must be pleaded with particularity in

accordance with Rule 9(b).  *Id.*  This requires "specificity as to the statements (or omissions)

considered to be fraudulent, the speaker, when, and why the statements were made, and an

explanation of why they were fraudulent."  *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir.

2005); *see also Southland Secs. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir.

2004).  In other words, the complaint must provide "the essentials of the first paragraph of any

newspaper story."  *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994).

After reviewing the Complaint, the Court does not find facts that show on which

misrepresentations Plaintiffs are basing the civil conspiracy claim and underlying fraud claim.

The Court could reasonably conclude that the misrepresentations at issue include the Amex

Letter, the Bryan Cave Letter, and any alleged statement made by any Defendant.  Because the

Court encounters such uncertainty at the early stage of the 9(b) analysis, it does not proceed

with the full analysis.  However, any misrepresentation that is the basis for the conspiracy and

underlying fraud claims must meet the standards explained above.  Accordingly, Plaintiffs' failure

to state a claim for the underlying fraud provides a separate basis on which the Court **GRANTS**

the Motion to Dismiss Count One.

### D.     Count Two: Unjust Enrichment

Amex moves to dismiss Count Two under Rules 12(b)(6) and 9(b), because the

Complaint fails to state a claim for unjust enrichment and does not plead with 9(b) particularity.

Unjust enrichment is characterized by five elements: (1) an enrichment; (2) an impoverishment;

(3) a connection between the enrichment and the impoverishment; (4) absence of justification

for the enrichment and the impoverishment and (5) an absence of a remedy provided by law.

*City of Sierra Vista v. Cochise Enter., Inc.*, 697 P.2d 1125, 1132 (Ariz. Ct. App. 1984).[6]  Amex

argues that the Complaint fails to allege facts showing that Amex benefitted at Plaintiffs'

expense.  Here, the Complaint alleges that Defendants received "significant monetary

remuneration in the form of fees from the marketing and selling of the insurance policies to the

detriment of Plaintiffs" and also that "Defendants reaped substantial additional fees for each of

these individual engagements."  (Compl. ¶ 66, 226.)  Viewing well-pleaded facts in the most

favorable light, the Court concludes that these allegations sufficiently state an unjust enrichment

---

[6]The substantive laws of the possible states are substantially similar to Arizona law with the exception of California law.  *DCB Constr. Co. v. Cent. City Dev. Co.*, 965 P.2d 115, 119-120 (Colo. 1998); *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672 (Ill. 1989); *Concrete Prods. Co. v. Salt Lake County*, 734 P.2d 910, 911 (Utah 1987) (citation omitted); *Young v. Young,* 191 P.3d 1258, 1262 (Wash. 2008); *S & M Rotogravure Serv. Inc. v. Baer*, 252 N.W.2d 913 (Wis. 1977).  California law does not recognize unjust enrichment as a cause of action.  *McKell v. Wash. Mut., Inc.*, 49 Cal. Rptr. 3d 227, 254 (Ct. App. 2006); *Melchior v. New Line Prods., Inc.*, 131 Cal. Rptr. 2d 347, 357 (Ct. App. 2003).

claim.

Moreover, Amex argues that unjust enrichment must be pleaded with 9(b) particularity. (Mot. Dismiss 15-16.)  The Court disagrees.  Amex mistakenly relies on *Arnold & Associates, Inc. v. Misys Healthcare Systems*, 275 F. Supp. 2d 1013, 1025 (D. Ariz. 2003).  In *Arnold,* the court applied 9(b) particularity but to the case's fraud claim.  To the unjust enrichment claim, the court applied the 12(b)(6) pleading standard and ultimately, denied the defendant's motion to dismiss the unjust enrichment claim.  Amex's other cases on this point are similarly inapposite.

Finally, unjust enrichment is not a cause of action under California state law.  *McKell v. Wash. Mut., Inc.*, 49 Cal. Rptr. 3d 227, 254 (Ct. App. 2006) (noting that "there is no cause of action for unjust enrichment" under California law); *Melchior v. New Line Prods., Inc.*, 131 Cal. Rptr. 2d 347, 357 (Ct. App. 2003 ("Unjust enrichment is a general principle, underlying various legal doctrines and remedies, rather than a remedy itself . . . .").  If the California Plaintiffs are ultimately successful on their other causes of action, they may seek unjust enrichment as a remedy.  Accordingly, the Court **GRANTS** Amex's Motion to Dismiss the unjust enrichment claim as to any Plaintiffs that California state law applies to (DP Search, Sarmiento, PHR, Pekerol, Valley Vista, DeSalvo, BEK) and **DENIES** Amex's Motion to Dismiss Count Two as to the remaining non-California Plaintiffs.

## E.    Count Three: Negligent Misrepresentation

Amex moves to dismiss Count Three under Rules 12(b)(6) and 9(b).  After setting out the legal standard, the Court will address Amex's 12(b)(6) and 9(b) arguments for dismissal.  In Arizona, negligent misrepresentation occurs when:

[o]ne who, in the course of business, profession or employment, or in any other

> transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co.*, 742 P.2d 808, 813 (Ariz. 1987) (applying the Restatement (Second) of Torts, § 552(1)).[7] Such a claim may be based on either affirmative misrepresentations or omissions. *See, e.g., Alaface v. Nat'l Inv. Co.*, 892 P.2d 1375, 1387 n.3 (Ariz. Ct. App. 1994) ("Negligent misrepresentation may be by omission or nondisclosure of materials facts as well as by overt misrepresentation.").

Amex argues that the Complaint fails to state a negligent misrepresentation claim under 12(b)(6) in several respects. First, Amex contends that Plaintiffs do not allege that Amex made any representations to Plaintiffs. (Mot. Dismiss 10.) Second, Amex asserts that the Complaint does not allege that Amex knew that nonparty ECI would provide the Amex Letter to third parties. (*Id.*) Third, Amex argues that the Complaint does not allege any misrepresentation that is a misstatement of fact. (Mot. Dismiss 10-11.) In response, Plaintiffs contend that the Complaint sufficiently alleges a claim for negligent misrepresentation in accordance with the Restatement (Second) of Torts, § 552(1). The Court will address these arguments in turn.

The Court does not agree with Amex's arguments that Plaintiffs do not allege that Amex made any representations to Plaintiffs and that Amex knew that nonparty ECI would provide the

---

[7] Other relevant states' laws on negligent misrepresentation are similar to Arizona law. *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 70 Cal. Rptr. 3d 199, 215 (Ct. App. 2007); *Bedard v. Martin*, 100 P.3d 584, 592 (Colo. App. 2004); *First Midwest Bank v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 335 (Ill. 2006); *Price-Orem Inv. Co. v. Rollins, Brown and Gunnell, Inc.*, 713 P.2d 55, 59 (Utah 1986); *Transamerica Title Ins. Co. v. Johnson*, 693 P.2d 697, 702 (Wash. 1985); *Malzewski v. Rapkin*, 723 N.W.2d 156, 163 (Wis. Ct. App. 2006).

Amex Letter to third parties.  Even a cursory review of the Complaint reveals that both

arguments fall short.  Specifically, the Complaint alleges that the Amex Letter represented that

"the Pendulum Plan . . . could be administered as a fully qualified 412(i) plan," that Defendants

"made or caused to be made false and misleading representations . . . for the guidance of

Plaintiffs," and that Defendants provided the Amex Letter "for the express purpose, and with the

express understanding, that ECI and the Insurance Companies would be using such

representations in order to promote, market, and sell the Pendulum Plan and similar plans, as

well as the insurance policies . . . ."  (Compl. ¶¶ 57, 229, 231.)

   With respect to Amex's remaining 12(b)(6) argument, Amex argues that the Complaint

fails to allege a misrepresentation, because the Amex Letter, at most, is only a misstatement of

opinion or future conduct, not a misstatement of fact.  Generally, for a statement to be an

actionable misrepresentation, it must be a misstatement of fact, not of opinion or future conduct.

*Borba v. Thomas*, 138 Cal. Rptr. 565, 570 (Ct. App. 1977).  Several exceptions to this general

rule exist.[8]  However, as this Court has recently stated, such exceptions are inapplicable when

someone "[relies] on a prediction of future IRS enactment, enforcement, or non-enforcement of

the law by someone unaffiliated with the federal government."  *Berry v. Indianapolis Life Ins. Co.*,

600 F. Supp. 2d 805, 820 n.19 (N.D. Tex. 2009).  Rather, the Court finds reliance in such

instances to be inherently unreasonable and an untenable basis for misrepresentation.  *Id.*

   The Complaint alleges that the Amex Letter stated "that the Pendulum Plan, as funded

---

[8]The exceptions are: "(1) where a party holds himself out to be specially qualified and the other party is so situated that he may reasonably rely upon the former's superior knowledge; (2) where the opinion is by a fiduciary or other trusted person; [or] (3) where a party states his opinion as an existing fact or as implying facts which justify a belief in the truth of the opinion."  *Borba v. Thomas*, 138 Cal. Rptr. 565, 570 (Ct. App. 1977).

with the [specimen insurance policy], could be administered as a fully qualified 412(i) plan."

(Compl. ¶ 57.)  The Court understands the Amex Letter to be predicting future IRS treatment

and enforcement of the Pendulum Plan as a qualified 412(i) plan.  Because the Complaint

contains no allegations that Amex was in any way affiliated with or had any special knowledge of

the IRS, the Court concludes that any reliance on the Amex Letter was unjustified.

Accordingly, the Court **GRANTS** Amex's Motion to Dismiss Count Three.

Amex also moves to dismiss the negligent misrepresentation claim, because it does not

meet 9(b) particularity.  Amex contends that 9(b) applies, because negligent misrepresentation is

based on the underlying torts of fraud and misrepresentation.  (Mot. Dismiss 15.)  The Court

disagrees.  Because this is a negligent misrepresentation claim, not a fraud claim, 9(b)

particularity is not required.  *Arnold & Assocs., Inc. v. Misys Healthcare Sys.*, 275 F. Supp. 2d

1013, 1029 (D. Ariz. 2003).

## F.   Count Four: Aiding and Abetting Common-Law Fraud

In Count Four, Plaintiffs allege that Defendants aided and abetted the nonparty

Insurance Companies in committing common-law fraud against Plaintiffs.  Amex has moved to

dismiss Count Four for failure to allege facts showing an aiding and abetting claim under Rule

12(b)(6), and failure to allege the underlying fraud with the requisite particularity under Rule

9(b).

Arizona law recognizes the civil claim of aiding and abetting, "where a person who aids

and abets a tortfeasor is himself liable for the resulting harm to a third person."  *Gemstar Ltd. v.

Ernst & Young*, 901 P.2d 1178, 1189 n.7 (Ariz. Ct. App. 1995), *vacated on other grounds*, 917 P.2d

222 (Ariz. 1996).  Aiding and abetting requires a showing of three elements: (1) that the primary

tortfeasor committed a tort that injures the plaintiff; (2) the defendant knew that the primary tortfeasor's conduct constituted a tort; and (3) the defendant substantially assisted or encouraged the primary tortfeasor in conducting the tort. *Dawson v. Withycombe*, 163 P.3d 1034, 1052 (Ariz. Ct. App. 2007) (citations omitted).[9]  The knowledge requirement may be inferred by "showing [defendant's] general awareness of the primary tortfeasor's fraudulent scheme." *Id.*

Under 12(b)(6), Amex argues that the aiding and abetting claim should be dismissed on several grounds.  Amex first contends that the claim is not sufficiently pleaded, because the primary tortfeasors–in this case, the Insurance Companies–are not parties to the instant suit. The Court finds this argument unpersuasive.  *See Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 36 (Ariz. 2002) (deciding the aiding and abetting tort claim on its merits when the primary tortfeasor was not a party to the suit and the court made no determination on the primary tort).

Amex also asserts that the "knowledge" and "substantial assistance" elements are not supported by facts.  The Complaint alleges that "Defendants knowingly and substantially assisted in and/or encouraged this fraud through . . . creating and designing the Pendulum Plan; providing the [Amex Letter] . . . ; authorizing and/or allowing ECI and the Insurance Companies to use the [Amex Letter] . . . ." (Compl. ¶ 240.)  Moreover, the knowledge element "may be averred generally" and "such knowledge may be inferred from the circumstances." *YF Trust v. JP Morgan Chase Bank*, No. 07-567, 2008 WL 821856, at *5 (D. Ariz. Mar. 26, 2008).  In light of

---

[9]Along with Arizona, Colorado and California recognize the civil claim of aiding and abetting common-law fraud. *River Colony Estates Gen. P'ship v. Bayview Fin. Trading Group, Inc.*, 287 F. Supp. 2d 1213, 1225 (S.D. Cal. 2003); *Sender v. Mann*, 423 F. Supp. 2d 1155, 1175 (D. Colo. 2006).  Illinois, Washington, Wisconsin, and Utah do not recognize the claim.

*Twombly*, the Court finds that the Complaint sufficiently alleges facts supporting the knowledge and substantial assistance elements of an aiding and abetting claim.

In pleading a claim for aiding and abetting, Plaintiffs must also plead the underlying tort allegedly committed by the primary tortfeasors. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 23 (Ariz. 2002). In the present case, the primary tortfeasors are identified as the Insurance Companies and the underlying tort is common-law fraud. (Compl. ¶ 239.) Because the underlying tort is fraud, it must be pleaded with 9(b) particularity. *Id.* This requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when, and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Southland Secs. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004). The complaint must provide "the essentials of the first paragraph of any newspaper story." *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994).

Plaintiffs have not sufficiently alleged the underlying fraud claim. The Complaint properly identifies the Insurance Companies' agents as the ones who made the allegedly fraudulent statements about the Pendulum Plan and the insurance policies. (Compl. ¶¶ 69, 76, 84, 101, 110, 119, 128, 136, 145, 153, 161, 169, 178, 186.) Similarly, the "when,"[10] "where,"[11]

---

[10]Complaint pleads specific dates that the alleged misrepresentations were made to each Plaintiff. (Compl. ¶¶ 69, 76, 84, 101, 110, 119, 128, 136, 145, 153, 161, 169, 178, 186.)

[11]Complaint pleads the state that the alleged misrepresentations were made to each Plaintiff. (Compl. ¶¶ 72, 79, 87, 104, 113, 122, 131, 139, 148, 156, 164, 172, 181.)

and "how"[12] are also sufficiently alleged.  *Id.*  The "why," however, is not.

In order to properly allege the "why," the Complaint must allege why the statement or omission was false or misleading *at the time made* by the Insurance Companies.  *Plotkin v. IP Axess, Inc.*, 407 F.3d at 696.  The Complaint alleges that in the early 2000s, "the IRS began to focus its scrutiny on [412(i)] plans and policies."  (Compl. ¶ 194.)  In addition, the Complaint also alleges that the IRS took more action against 412(i) plans in the form of presentations, announcements, and rulings, most notably in 2003 and 2004.  (Compl. ¶¶ 195-203.)  Yet none of Plaintiffs' allegations answer the necessary "why" question.  In the response brief, Plaintiffs argue that the statements were known to be false due to  "IRS criticism and scrutiny of certain aspects of 412(i) plans.  (Pls.' Resp 5-6, 32.)  IRS criticism and scrutiny alone are not sufficient to make statements false.  The Complaint fails to specify a definitive statement by the IRS that the relevant defined benefit plans were illegal when the statements were made.

At times, Plaintiffs appear to rely on the February 13, 2004 IRS rulings and rule to retroactively prove that the Insurance Companies' prior representations were false when made to Plaintiffs.  Such analysis fails to provide the necessary explanation as to why each representation was false when made.  Plaintiffs' current allegations in the Complaint do not allege that the plans (and policies) were illegal when sold or that the representations were false when made.  As a result, the underlying tort of the aiding and abetting claim has not been properly pleaded.  Accordingly, the Court **GRANTS** the Motion to Dismiss Count Four.  Additionally, four states–Illinois, Washington, Wisconsin, and Utah–do not recognize aiding and abetting

---

[12]Complaint pleads that the alleged misrepresentations were oral and/or written.  (Compl. ¶¶  72, 79, 87, 104, 113, 122, 131, 139, 148, 156, 164, 172, 181.)

common-law fraud as a cause of action.  As such, the Court has a second and independent basis

to **GRANT** the Motion to Dismiss Count Four as to Plaintiffs from those four states (AUI,

Rocky Mountain, Poulsbo, and Direct Electric).

As a final note, to the extent that Plaintiffs are alleging that any of the misrepresentations

of the primary tortfeasors–the Insurance Companies–are forward-looking or are opinions as to

how the IRS would treat 412(i) plans in the future, the Court finds those opinions unactionable

as the basis for aiding and abetting's underlying fraud claim under the current circumstances.

Similar to the Amex Letter, each representation allegedly made by the Insurance Companies is a

statement regarding federal income tax law or policy, including the policies of a third-party

government agency–the IRS.  As a matter of law, any alleged representation or prediction by the

Insurance Companies as to how the IRS would treat the 412(i) plans, and the funding thereof, in

the future is either unactionable opinion or was unjustifiably relied upon in connection with a

fraud claim.  *Dawson v. Withycombe*, 163 P.3d 1034, 1047 (Ariz. Ct. App. 2007) (finding

statements regarding company's future financial prospects unactionable as bases for fraud);

*Lidecker v. Kendall Coll.*, 550 N.E.2d 1121, 1125 (Ill. App. Ct. 1990) (finding assurances made to

prospective students that nursing program would become accredited to be unactionable as

prediction about future).

## G.    Count Five: Exemplary Damages

Amex challenges Count Five, because none of the allegations in the Complaint rise to

the requisite level of severity to merit exemplary damages.  (Mot. Dismiss 15.)  Because the

unjust enrichment claim still remains as to the non-California Plaintiffs, the issue of whether

Amex acted with an "evil mind," as that term is defined by Arizona law, is an issue of fact and

cannot be determined on the pleadings. *See Hearn v. R.J. Reynolds Tobacco Co.*, 279 F. Supp. 2d 1096, 1117 (D. Ariz. 2003) ("Since this Court has not dismissed all Plaintiffs' claims, the issue of whether or not the Defendant acted with an evil mind remains to be resolved, and the Defendants' motion to dismiss relating to Plaintiffs' punitive damages claim will be denied."). Accordingly, the Court **DENIES** the Motion to Dismiss Count Five as to the non-California Plaintiffs. Because no claims remain as to the California Plaintiffs, the Court **GRANTS** the motion to Dismiss Count Five as to the California Plaintiffs.

## IV.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion to Dismiss Complaint and Brief in Support (doc. 42). The Court **GRANTS** the Motion to Dismiss as to Count One, Count Two (for California Plaintiffs), Count Three, Count Four, and Count Five (for California Plaintiffs) of Plaintiffs' Complaint. The Court **DENIES** the Motion to Dismiss as to Count Two (for non-California Plaintiffs) and Count Five (for non-California Plaintiffs).

The Court does not take lightly dismissal of a claim without reaching its merits. Thus, a plaintiff will be given the opportunity to amend a complaint where it appears that more careful or detailed drafting might overcome the deficiencies on which dismissal is based. *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (noting that a court may dismiss a claim for failing to comply with Rule 9(b), but "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead particularity after being afforded repeated opportunities to do so."); *Hitt v. City of Pasadena*, 561 F.2d 606, 608-09 (5th Cir. 1977) (observing that a

complaint should only be dismissed under Rule 12(b)(6) "after affording every opportunity for the plaintiff to state a claim upon which relief can be granted."). Moreover, Plaintiffs in this case have specifically requested the opportunity to replead. (Pls.' Resp. 42-43.)

If Plaintiffs are able to replead any Counts to overcome all of the grounds stated herein for dismissal, they should do so by no later than twenty (20) days from the date of this Order. Further, any repleading shall be accompanied by a synopsis of no more than five (5) pages, explaining how the amendments overcome the grounds stated herein for dismissal. Should Plaintiffs replead, Amex is hereby granted leave to file a response to Plaintiffs' synopsis. Any such response shall not exceed five (5) pages and must be filed within ten (10) calendar days of the repleading. No further briefing will be permitted.

SO ORDERED.

DATED May 11, 2010

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE